THE STATE OF OHIO, APPELLEE, *v.* STEWART, APPELLANT.

[Cite as State v. Stewart (1977), 51 Ohio St. 2d 86.]

(No. 77-83—Decided July 13, 1977.)

*Mr. Charles H. Bean,* special prosecuting attorney, for appellee.

*Messrs. Lancione, Lancione, Lancione & Hanson* and *Mr. Richard L. Lancione,* for appellant.

CELEBREZZE, J. The appellant's sole proposition of law for this court's consideration charges that a trial court, in accepting a guilty plea in a felony case must comply with Crim. R. 11. Appellant's specific complaint alleges that the trial court failed to advise him that in pleading guilty to murder (R. C. 2903.02),[1] he would not be eligible for probation.[2]

---

[1] R. C. 2951.02(F) reads, in part, as follows:

"An offender shall not be placed on probation when any of the following applies:

"(1) The offense is aggravated murder or murder."

[2] Crim. R. 11(C)(2) provides in part:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

In the case of *State v. Younger* (1975), 46 Ohio App. 2d 269, from the Court of Appeals for Cuyahoga County, the court, in a well reasoned opinion, concluded with the following:

"Criminal Rule 11(C)(2) clearly and distinctly mandates that the trial judge, before accepting a guilty plea in a felony case, inform the defendant of his rights as expressed in the rule and determine that he understands those rights and that he is making his guilty plea voluntarily."

That court reasoned that it would be difficult for a defendant to voluntarily waive constitutional rights in a knowing and intelligent manner if those rights were not explained and understood. The trial court in the *Younger* case had apparently "failed to address the defendant personally and determine that the defendant was making his guilty plea voluntarily"; failed to determine that the defendant understood that "he could not be compelled to testify against himself" if he stood trial; failed to advise the defendant of a potential fine; and failed to determine if defendant understood that upon acceptance of his guilty plea the court "could proceed with judgment and sentence."

This court is satisfied that the *Younger* case is distinguishable on the above facts.

The Court of Appeals for Allen County, in the case of *State v. Scott* (1974), 40 Ohio App. 2d 139, 143, reversed a guilty plea with the following observation:

"[I]t appears that the court (1) did not examine him as to his understanding that he would not be eligible for probation, (2) did not inform him and determine his understanding that by his plea he was waiving his right to confront witnesses against him, (3) did not inform him and determine his understanding that by his plea he was waiving his right to have compulsory process for obtaining witnesses in his favor, and (4) did not inform him and determine his understanding that by his plea he was waiving his

---

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation."

right to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

That the last three of the above are constitutional rights which must be expressly understood and relinquished is not arguable.[3] The appellant here does not raise a question concerning his knowledgeable waiver of these rights and the record would clearly and affirmatively rebut any such claim. Appellant's sole concern is with the fact that he was not informed that he would not be eligible for probation.

The dialogue at the time the plea was accepted reveals the following:

"The Court: State of Ohio v. Ronald E. Stewart. State ready?

"Mr. Malik: State is ready.

"The Court: Is the Defendant ready?

"Mr. Chaney: Yes, Your Honor.

"The Court: You may proceed.

"Mr. Malik: If the Court pleases, the State of the Ohio has entered into some plea bargaining with Defendant and Defendant's Counsel, and after about two weeks of it, the state of Ohio has agreed to permit the Defendant to enter a plea of Guilty to Revised Code, Section 2903.02, Murder, which is the lesser included offense of the Section charged in the Indictment, 2903.01 A and Sub-Section B, and in addition, for said plea, the State will move that charges of Aggravated Murder, two counts, the charge of Kidnapping and the charge of Aggravated Burglary be dismissed.

"The Court: May be done."

These opening remarks encompass the extent of the plea negotiation concerning the underlying agreement in the event the ultimate plea is consummated. The following language clearly indicates this purpose:

"Mr. Chaney: We wish to withdraw the plea of Not Guilty to the charges in the Indictment and request that

---

[3]See *Boykin* v. *Alabama* (1969), 395 U. S. 238.

the charges as set forth in there not be charged against Mr. Stewart, but that he shall enter a plea of Guilty to Section 2903.02, Ohio Revised Code. Is that your wishes and desire, Mr. Stewart?

"A. Yes.

"The Court: Are you withdrawing your former plea of Not Guilty to the original charge?

"Mr. Chaney: Yes. We are asking first those charges be dismissed."

At this point the following colloquy takes place between the court and the appellant:

"The Court: They have been. Mr. Stewart, you may stand. Do you withdraw your former plea of Not Guilty and enter a plea of Guilty to the lesser included offense of Murder?

"A. Yes.

"Q. You do that voluntarily?

"A. Yes, sir.

"Q. You understand the nature of the charge?

"A. Yes, sir.

"Q. You understand the maximum penalty that is involved?

"A. Yes.

"Q. You further understand the Court may sentence you today?

"A. Yes, sir.

"Q. You further understand that if you stood trial by Jury that the state of Ohio must prove you guilty beyond a reasonable doubt?

"A. Yes.

"Q. You further understand that you have a right to confront the witnesses of the state of Ohio, if you stood trial?

"A. Yes.

"Q. You further understand that you have a right to subpoena witnesses on your behalf if you stood trial?

"A. Yes.

"Q. You further understand that if you stood trial that you would not have to testify?

"A. Yes.

"Q. You voluntarily signed a Petition that was presented to you?

"Mr. Chaney: Here it is.

"Q. Do you understand the contents of that Petition?

"A. Yes, sir.

"Q. You may sign it.

"(WHEREUPON, Petition is signed in open Court.)

"Q. Now, the terms and the contents of this Petition, have they been read to you?

"A. Yes.

"Q. You fully understood the contents therein?

"A. Yes.

"Q. You voluntarily signed this Petition, is that correct?

"A. Yes .

"Q. Under the law of Ohio, no person shall purposely cause the death of another. Whoever violates this Section is Guilty of Murder and shall be punished as provided in Section 2929.02 of the Revised Code of Ohio, which reads as follows: 'Whoever is convicted of or pleads guilty to murder in violation of Section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life. In addition, the offender may be fined an amount fixed by the court, but not more than fifteen thousand dollars.'

"Mr. Stewart, do you have anything personally to say before the sentence of the Court is pronounced against you? Your Counsel may speak for you if you don't wish to speak. You may be seated."

The petition which appellant signed in open court contains the following language:

"I declare that no officer or agent of any branch of government (Federal, State or local) nor any other person, has made a promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency if I would plead 'Guilty.' "

We are satisfied that the appellant at the time his guilty

92 ■

plea was accepted was advised of the consequences of his plea, and that he was facing imminent sentence. The trial judge did not recant the precise verbiage of Crim. R. 11(C) (2)(a), "that he is not eligible for probation," but the court did specifically inform the appellant of the maximum penalty. Under the circumstances in this case, especially when there is not even a request for referral to prepare a report precedent to the court considering probation it would appear that there has been substantial compliance with the rule.⁴

In *United States* v. *Brogan* (C. A. 6, 1975), 519 F. 2d 28, the court held that substantial compliance with Fed. R. Crim. P. 11 was sufficient. The court further commented that rote recitation of the rule was not necessary, stating:

"We believe that we have not yet reached the state where Courts will require the parroting of any rule; nor should we encourage a defendant to trifle with the court."⁵

In the case of *State* v. *Stone* (1975), 43 Ohio St. 2d 163, involving a disputed plea prior to Crim. R. 11, Justice Corrigan, at pages 167-168, made the following prescient dissertation:

"It should be noted that Crim. R. 11, effective July 1, 1973, and similar to F. R. Crim. P. 11, remedies the problems inherent in a subjective judgment by the trial court as to whether a defendant has intelligently and voluntarily

---

⁴In the past, substantial compliance with Federal Rule of Criminal Procedure 11 has often been approved. See *Fruchtman* v. *Kenton* (C. A. 9, 1976), 531 F. 2d 946, certiorari denied, 429 U. S. 895 (1976); *Sappington* v. *United States* (C. A. 8, 1975), 523 F. 2d 858; *United States* v. *Madrigal* (C. A. 7, 1975), 518 F. 2d 166; *Burroughs* v. *United States* (C. A. 5, 1975), 515 F. 2d 824; *United States* v. *Maggio* (C. A. 5, 1975), 514 F. 2d 80, certiorari denied, 423 U. S. 1032 (1975); *McRae* v. *United States* (C. A. 8, 1976), 540 F. 2d 943; *Bachner* v. *United States* (C. A. 7, 1975), 517 F. 2d 589; *United States* v. *Ortiz* (C. A. 8, 1976), 545 F. 2d 1122.

⁵Several state courts have held that substantial compliance with their statutory procedure for the acceptance of guilty pleas is sufficient. See, *e. g., People* v. *Krantz* (1974), 58 Ill. 2d 187, 317 N. E. 2d 559; *Bradley* v. *State* (Mo. 1973), 494 S. W. 2d 45; *Valdez* v. *State* (Tex. Cr. App. 1974), 507 S. W. 2d 202.

waived his constitutional rights and ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandably and voluntarily made."

This court finds that the trial court did inform the defendant of his constitutional rights, which were duly waived, and of various consequences of the plea. More importantly, the plea was voluntarily made, with the knowledge and understanding by the defendant that he had been promised neither " a lighter sentence, or probation, or any other form of leniency * * *."

Finally, although it can validly be argued that the trial court should adhere scrupulously to the provisions of Crim. R. 11(C)(2) (*State* v. *Caudill* [1976], 48 Ohio St. 2d 342), there must be some showing of prejudicial effect before a guilty plea may be vacated. See Crim. R. 52(A). This court is of the opinion that the appellant has not demonstrated that he was in any way prejudiced by the oversight of the trial court. See *Kelleher* v. *Henderson* (C. A. 2, 1976), 531 F. 2d 78, where it was held that knowledge of maximum and minimum sentences is not constitutionally required; the test is whether the plea would otherwise have been made. See, also, *Bell* v. *Estelle* (C. A. 5, 1975), 525 F. 2d 656. In the instant case, the factual circumstances indicated a guilty plea to a lesser offense was the wiser course to follow, and the absence of a ritualistic incantation of an admonishment which is not constitutionally guaranteed does not establish grounds for vacating the plea.

The trial court substantially complied with the requirements in Crim. R. 11, and the failure to personally advise appellant that in entering a plea of guilty to murder he would not be eligible for probation does not rise to the status of prejudicial error.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, SWEENEY and LOCHER, JJ., concur.
O'NEILL, C. J., W. BROWN and P. BROWN, JJ., dissent.

O'Neill, C. J., dissenting. The holding of the majority that the failure to advise the defendant that he is ineligible for probation does not constitute prejudicial error is an unwarranted retreat from the principle enunciated in *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, 358 N. E. 2d 601, that the provisions of Crim. R. 11(C)(2) must be scrupulously adhered to in order to enable the trial court to "determine fully the defendant's understanding of the consequences of his plea of guilty * * *."

I would reverse the judgment on the authority of *Caudill.*

W. Brown and P. Brown, JJ., concur in the foregoing dissenting opinion.